```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                  :
ISIAH LEWIS
                                  :
     v.                           :    Civil Action No. DKC 2008-2249
                                  :
JOHN E. POTTER
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination action is the motion to dismiss, or alternatively, for summary judgment filed by Defendant John E. Potter, Postmaster General of the United States Postal Service ("USPS"). (Paper 11). The issues are briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion to dismiss will be granted.

**I. Background**

Plaintiff Isiah Lewis is a postal worker at the USPS Suburban Annex facility in Gaithersburg, Maryland. Plaintiff describes three incidents that occurred during his employment. The first incident occurred in 1996, when Plaintiff took a test to qualify for USPS's Associate Supervisor Program ("ASP"). After passing the test, Plaintiff interviewed with the plant manager at the Brentwood facility. The following day, his supervisor at the Suburban Annex informed him that he had been disqualified from the program. As a

result, Plaintiff never attempted to enter any other USPS management programs.

The second incident occurred on May 9, 2008, when a tornado caused a power outage at the Suburban Annex facility. Although Cary Windsor, the plant manager, permitted workers at an associated facility to go home because of the power outage, Mr. Windsor instructed workers at the Suburban Annex to continue working, despite the lack of proper light and oppressive heat. In addition, during that evening, USPS set up generators that emitted fumes which caused Plaintiff to feel tired and nauseated.

The third incident occurred on June 1, 2008, when Plaintiff received a notice from USPS management, signed by Mr. Windsor, informing him that he would receive a 14-day suspension for failing to attend work regularly or to arrive on time for his shifts.

On June 5, 2008, Plaintiff filed a formal grievance with USPS alleging "sick leave discrimination" and retaliation after he received notice of his impending suspension. On July 5, 2008, Plaintiff wrote a handwritten "Grievance/EEO" document, claiming that he was the victim of "retaliation, discrimination, [and] harassment," and that the "[d]ouble [s]tandard against Blacks at the Suburban Annex" caused his disqualification from the 1996 ASP. (Paper 2). On July 6, 2008, Plaintiff filed another formal grievance with USPS regarding the power outage, in which he alleged discrimination based on retaliation and an unspecified physical

2

disability.  USPS dismissed both of Plaintiff's formal grievances on July 28, 2008, for failure to state a claim.

On August 28, 2008, Plaintiff, proceeding *pro se*, filed two documents in this court: (1) USPS's dismissal of his formal Equal Employment Opportunity ("EEO") grievances, and (2) the Inquiry Report from the EEO Dispute Resolution Specialist.  (Paper 1).  On August 29, 2008, the court notified Plaintiff that he should file a formal complaint in order for his case to proceed.  The same day, Plaintiff filed a formal complaint with the court alleging "safety discrimination and retaliation" as well as disability discrimination.  (Paper 2).  Plaintiff attached to the complaint a letter from the Department of Medical Affairs and the handwritten "Grievance/EEO" document dated July 5, 2008, relating to the 1996 event.  Plaintiff bases his discrimination claims on "prior EEO activity."  He also asserts that Mr. Windsor's decision to have the Suburban Annex employees continue working during the power outage constituted safety discrimination and retaliation because Mr. Windsor permitted workers at a nearby facility to go home.

On February 4, 2009, Defendant filed a motion to dismiss Plaintiff's complaint, or alternatively, for summary judgment. (Paper 11).  In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court mailed a letter to Plaintiff on February 4, 2009, notifying him that Defendant filed a dispositive motion and

3

Plaintiff's case could be dismissed or summary judgment could be entered against him. (Paper 12). Plaintiff did not respond.

As noted above, the complaint and supporting papers refer to three incidents: (1) the 1996 ASP from which Plaintiff was disqualified; (2) the power outage during which he and other Suburban Annex employees were required to work; and (3) the 14-day suspension that he received for failing to attend work regularly or arrive at work on time. Defendant filed a motion to dismiss, contending that any causes of action in the complaint arose out of Plaintiff's allegations relating to the power outage or the 1996 ASP. Specifically, Defendant argues that: (1) all of Plaintiff's claims should be dismissed for failure to allege properly subject matter jurisdiction; (2) Plaintiff's claims related to the 1996 ASP should be dismissed for failure to exhaust administrative remedies; and (3) Plaintiff's claims relating to the power outage should be dismissed for failure to state a claim.

In his motion to dismiss, or alternatively, for summary judgment, Defendant articulated the contours of Plaintiff's disorganized complaint as he understood it, noting that Plaintiff's claims appeared to stem only from the power outage and 1996 ASP, to the exclusion of the suspension. By failing to respond to Defendant's motion after receiving notice of its filing, Plaintiff essentially acquiesced to Defendant's interpretation of his complaint and therefore conceded any claims that he may have had

4

relating to his 14-day suspension.  *See Kropelnicki v. Siegel*, 290 F.3d 118 (2nd Cir. 2002)(noting the district court's decision to deem certain of Plaintiff's claims waived when Plaintiff failed to respond to Defendant's motion to dismiss).  As a result, the court will only consider Plaintiff's claims arising from the 1996 ASP and the power outage.

**II. Analysis**

    **A.  Failure to Allege Subject Matter Jurisdiction**

At the outset, Defendant argues that this action should be dismissed because Plaintiff did not mark a box on the complaint to indicate whether jurisdiction arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701, *et seq.*, or the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*.  (Paper 11, at 6).

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1).  The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945

F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

Contrary to Defendant's contention, Plaintiff expressly notes that the court has jurisdiction over his claims based on a federal question arising under employment law. Additionally, Plaintiff checked a box on the complaint indicating that his complaint was based on disability discrimination. (Paper 2). Thus, the court will not dismiss Plaintiff's claims for lack of subject matter jurisdiction simply because Plaintiff has alleged jurisdiction in an inartful manner. *See Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005)(explaining that "inartful pleading" of subject matter jurisdiction does not deprive a federal court of jurisdiction where it is readily discernable from the complaint that a claim is based on a federal question). Accordingly, Defendant's motion to dismiss on this ground will be denied.

    **B.**    **Failure to Exhaust Administrative Remedies**

Defendant also argues that Plaintiff's claim related to the 1996 ASP should be dismissed because Plaintiff failed to exhaust administrative remedies before bringing this claim in federal court. (Paper 11, at 10-11). Exhaustion of administrative remedies requires that a plaintiff file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and

receive, or be entitled to receive, a right to sue letter before filing a federal claim. 42 U.S.C. § 2000e-5(b), 16(c). Specifically, a federal employee is required to contact an EEO counselor "within [45] days of the date of the matter alleged to be discriminatory . . . ." *See* 29 CFR § 1614.105(a)(1); *LaPorte v. Henderson*, 176 F.Supp.2d 464, 470 (D.Md. 2001), *aff'd*, 45 Fed.Appx. 250 (4th Cir. 2002)(unpublished). "[A] failure by the plaintiff to [first] exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

Here, as noted above, Plaintiff included a handwritten "Grievance/EEO" document dated July 5, 2008 with his complaint. However, there is no indication that Plaintiff ever filed this grievance with an EEO counselor or received, or was entitled to receive, a right-to-sue letter in response. Rather, Plaintiff first raises the issue in his complaint in this court. Assuming, *arguendo*, that Plaintiff had filed this document with the EEO on July 5, 2008, his claim would nonetheless be dismissed because the alleged discriminatory event occurred in 1996, twelve years before Plaintiff would have filed the July 5, 2008 grievance, and far outside the forty-five day window prescribed by law. Ultimately, because Plaintiff fails to demonstrate that he first exhausted

administrative remedies in relation to the 1996 ASP, the claim resulting from that incident will be dismissed.

**C.   Failure to State a Claim**

The only remaining claims that Plaintiff may assert stem from the power outage. Defendant contends that these claims should be dismissed pursuant to Rule 12(b)(6) for two reasons. Defendant argues that Plaintiff's allegations of "safety discrimination and retaliation" do not constitute cognizable legal claims under federal law. (Paper 11, at 6-7). Defendant further argues that Plaintiff fails to allege sufficient facts to state a cause of action under any recognized federal employment law. (*Id.* at 8-10).

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual
8

enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Finally, while courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," they may nonetheless dismiss complaints that lack a cognizable legal theory or that fail to

allege sufficient facts under a cognizable legal theory. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Turner v. Kight*, 192 F.Supp.2d 391, 398 (D.Md. 2002), *aff'd*, 121 Fed.Appx. 9 (4th Cir. 2005)(unpublished).

Federal law provides causes of action for employment discrimination in cases where employers take adverse employment action against employees on the basis of certain protected traits such as disability, race, national origin, religion, gender, or age, or in retaliation for engaging in protected activity. *See*, *e.g.*, Rehabilitation Act, ADA, Title VII, ADEA, and 42 U.S.C. § 1981. Because Plaintiff's claim of "safety discrimination" is not based on a cognizable legal theory, it will be dismissed. Additionally, as will be discussed below, Plaintiff's remaining claims related to the power outage will be dismissed because Plaintiff fails to allege sufficient facts to state a claim for relief under any cognizable employment law.

### 1. Intentional Discrimination Claims

As will be discussed, Plaintiff fails to state a claim for intentional discrimination stemming from the power outage under the Rehabilitation Act, Title VII, or the ADEA. Courts evaluate disability discrimination claims brought by federal employees against their employers under the Rehabilitation Act. *See, e.g.*, *Hooven-Lewis v. Caldera*, 249 F.3d 259, 266-68 (4th Cir. 2001)(analyzing a disability discrimination claim against the Army

10

under the Rehabilitation Act). The USPS is a federal employer. *Tesh v. U.S. Postal Serv.*, 349 F.3d 1270, 1275 (10th Cir. 2003). To establish a claim under the Rehabilitation Act, Plaintiff must plead facts sufficient to show that: (1) he has a disability; (2) he is a qualified individual for the employment in question; and (3) his employer took adverse employment action against him because of his disability. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 197 (4th Cir. 1997), *abrogated on other grounds by Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999). Additionally, to establish a claim under Title VII or the ADEA, Plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing at a level that met Defendant's legitimate expectations; and (4) he was treated differently from other similarly situated persons who are not members of his protected class. *Byrd v. The Baltimore Sun Co.*, 279 F.Supp.2d 662, 668 (D.Md. 2003)(Title VII), *aff'd*, 110 Fed.Appx. 365 (4th Cir. 2004)(unpublished); *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996)(ADEA), *cert. denied*, 520 U.S. 1116 (1997). Specifically, Title VII prevents discrimination based upon race, religion, sex, or national origin, while the ADEA prevents discrimination based upon age.

Under the Rehabilitation Act, Plaintiff's assertion that he is a 40% disabled veteran could be liberally construed to allege that

11

he has a disability, and for Title VII, Plaintiff undoubtedly is a member of some protected class, *i.e.*, male. On the other hand, he fails to allege protected status under the ADEA.

For all claims, Plaintiff cannot allege adverse employment action merely because his manager required him to work without air conditioning and proper lighting during the power outage. An adverse employment action is a discriminatory act that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007), *cert. denied*, 128 S.Ct. 955 (2008). The adverse action must cause some significant detrimental effect, such as a decrease in compensation, job title, level of responsibility, or opportunity for promotion. *Id*. (citing *Boone v. Goldin*, 178 F.3d 253, 256–57 (4th Cir. 1999)). "The mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action." *Id.* Because Plaintiff alleges at most that he faced an unpleasant job assignment during the power outage, he has not pled sufficient facts to demonstrate that he suffered an adverse employment action.

Finally, Plaintiff's discrimination claims related to the power outage fail because he cannot show that his employer discriminated against him *because of* his disability, race, gender, or age. *See Halperin*, 128 F.3d at 197. Rather, Plaintiff defeats his own argument for intentional discrimination by asserting that Mr.

12

Windsor required not only him, but also *all* other Suburban Annex employees to remain at work during the power outage. *See Hughes v. Bedsole*, 48 F.3d 1376, 1384–85 (4th Cir. 1995)(explaining that a plaintiff could not prevail on a sex discrimination claim when the evidence showed that both male and female employees were treated more leniently than the plaintiff), *cert. denied*, 516 U.S. 870 (1995). Accordingly, Plaintiff's claims for intentional discrimination will be dismissed.

**2. Retaliation Claim**

To prevail on a claim for retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) his employer took action that would be materially adverse to a reasonable employee or job applicant; and (3) there is a causal connection between the protected activity and the asserted adverse action. *Lettieri*, 478 F.3d at 650 n.2. Plaintiff ultimately fails to state a cause of action for retaliation stemming from the power outage because he has not sufficiently pled that a causal connection exists between the filing of his EEO grievances and the alleged retaliatory conduct.

Plaintiff did engage in protected activity by repeatedly filing EEO grievances against Mr. Windsor. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)(noting that protected activity includes formal and informal grievance procedures). It is unclear, however, whether Plaintiff alleges an adverse employment action sufficient for a retaliation claim. The

13

United States Supreme Court recently explained that the standard used to identify adverse employment actions in retaliation claims is less restrictive that the standard used in substantive discrimination claims, such as those arising under the Rehabilitation Act. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60, 68 (2006). Although merely trivial harms will not suffice, the Court held that employment actions that could "[dissuade] a reasonable worker from making or supporting a charge of discrimination" were sufficient to qualify as "materially adverse," even if they do not affect the terms, conditions, and benefits of a worker's employment. *Id.* at 68. Assuming, *arguendo*, that requiring Plaintiff to work without proper lighting and in oppressive heat could be liberally construed to constitute a "materially adverse" employment action for purposes of a retaliation claim, Plaintiff's claim would nonetheless fail.

Ultimately, Plaintiff fails to plead sufficient facts to establish a causal connection between any of his EEO grievances against Mr. Windsor and the alleged adverse employment action he suffered as a result. To establish a causal connection between the protected activity and the alleged adverse action, Plaintiff must demonstrate that the adverse employment action against him took place shortly after his employer learned that he had engaged in protected activity. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). When the alleged retaliatory conduct occurs *before* the

14

employee engages in the protected activity, the retaliation claim necessarily fails. *See Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 181 (4th Cir. 1998)(reversing a judgment in plaintiff's favor when the alleged retaliation "fatally" occurred before Plaintiff filed his EEO grievance).

According to Plaintiff, the power outage during which Plaintiff was required to work occurred on May 9, 2008. However, Plaintiff did not file his EEO grievance alleging "sick leave discrimination" and retaliation by Mr. Windsor until June 5, 2008, nearly a month later. In this instance, because the alleged retaliatory conduct occurred *before* Plaintiff engaged in a protected activity, Plaintiff cannot establish the causal connection necessary for a retaliation claim. *See id.* Plaintiff also asserts in his June 5, 2008 EEO grievance that he had previously filed another EEO grievance against Mr. Windsor. Any causal connection between this alleged grievance and the power outage also fails, however, because Plaintiff has neither indicated that this grievance pre-dated the power outage nor alleged facts sufficient to demonstrate that Mr. Windsor knew of this complaint when the power outage occurred. *See Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006)(explaining that an employee's retaliation claim failed because he could not show that the relevant officials knew he had engaged in protected activity when the alleged retaliatory conduct occurred), *cert. denied*, 549

U.S. 1051 (2006).  Therefore, Plaintiff's retaliation claim will be dismissed.

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted.  A separate Order will follow.

```
             /s/
DEBORAH K. CHASANOW
United States District Judge
```